WHITE RIVER VALLEY RY. CO., Appellant, v. APPEL, Respondent.

(137 N. W. 48.)

1. **Answer—Counterclaim—Answer Treated as Counterclaim.**
    Where no objection was made in trial court that a pleading claimed to be a counterclaim was not such, it will be treated in the supreme court as a counterclaim.

2.   **Statute of Frauds—Sufficiency of Evidence—Agency.**

Evidence **held** sufficient to support finding that a contract of sale of land was made in writing by vendor personally through written correspondence, although her husband conducted part of the correspondence and attended to certain details; such contract is not void under the statute of frauds.

(Opinion filed, June 25, 1912.)

Appeal from Circuit Court, Pennington County. Hon. LEVI McGEE, Judge.

Action by the White River Valley Railway Company and another against Morris Appel and another, to determine adverse title to land. From a judgment for defendant Margaret Appel, plaintiffs appeal. Affirmed.

*William G. Porter, Ed. L. Grantham, Charles W. Brown,* and *James M. Hodgson,* for Appellants.

The statutory provisions applicable to this case are as follows: Section 938 of the Civil Code; Section 1311 of the Civil Code; Section 1287 of the Civil Code; Section 1667 of the Civil Code; Section 1668 of the Civil Code; Section 51 of the Code of Civil Procedure.

It will be observed that the court found in its second finding of fact that the escrow agreement was entered into in the year 1895, and thereafter modified on or about the 29th day of January, 1900, by an agreement in writing between Cora E. Hugus and Margaret Appel; that the said respondent Margaret Appel should pay, and Cora E. Hugus accept, as the full purchase price and consideration for the premises in controversy, the sum of $400 in addition to the consideration theretofore paid by the respondent, Margaret Appel. This finding of the court is directly contrary to the evidence and absolutely in the teeth of the respondents own evidence offered in support of their defense. By the testimony of Almon S. Hugus, offered by the respondents to maintain the allegations of their answer, it was shown that he offered to sell to the respondent, Morris Appel, the property for $400, the respondent to pay all taxes and send Hugus the tax receipts. This is the respondents' own testimony and cannot be denied. It is an admitted fact (Abs.

36-37-38).   Respondents also offered the testimony of Almon S. Hugus, absolutely denying that the deal of January 29, 1900, was a part or continuation of the deal intended to be made by the escrow agreement of 1895 (Abs. 40-41).   This is another admitted fact.   A careful scrutiny of the dates of all the documents that go to make up the alleged escrow agreement show conclusively that that agreement was not made until January 7, 1897. The warranty deed, placed in escrow, was dated June 1, 1895, but it was not executed and acknowledged until the 2nd day of October, 1896, in Baxter county in the state of Arkansas.   It was not sent from Arkansas, or the mortgage with it, to be placed in escrow in the bank until October 6, 1896, and all these documents were incomplete until the placing in escrow of the notes secured by the mortgage, and these notes were not executed until January 7, 1897.

The amended answer simply alleges that the respondents are the owners and in possession of the property and have placed thereon improvements to the value of $850 and been in the open, continuous and notorious possession thereof for fourteen years prior to the commencement of this action.

All the evidence offered by them to sustain the second paragraph of the respondents' amended answer was properly objected to by the plaintiffs; the objections overruled by the court; exceptions duly taken and all properly assigned as error in the statement of the case and the abstract.   (Abs. 707-8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55).   These objections, the rulings thereon, and the exceptions thereto are found properly assigned as error in assignments of error numbers 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22.

Averments in a pleading will not be treated as a counterclaim unless so designated.   State v. Courghran, 19 S. D. 271.

That the respondents abandoned all rights that they might have had under the escrow agreement and never considered the agreement of January, 1900, as a modification thereof, is conclusively proved by their failure to demand the deed then lying

in escrow in the Pennington County Bank; to demand back the mortgage they had signed, and which they perhaps thought was a valid mortgage upon their property, or to demand a return of the promissory notes executed by them, and lying in the Pennington County Bank with the deed and mortgage up to the time of the commencement of this action.

The evidence of the respondents, coupled with the admitted facts in this case, show that beyond a doubt nothing could have been further from the minds of the respondents and Cora E. Hugus than the escrow agreement which was finally consummated as shown by the dates of the documentary evidence in this case on the 7th of January, 1897.

We have always been possessed with the belief that real property could only be conveyed by deed, by descent or by operation of law. The respondents have not brought themselves within any of these requirements.

Even where the statute provides that possession shall take a contract out of the statute, the evidence must show clearly that the possession taken was under, and in accordance, with the contract. Lowrey v. Lowrey, (Ia.) 89 N. W. 1118.

Where a party is in possession of land under a lease, his continuance in that possession will not be sufficient to support a claim of part performance under a subsequent contract of purchase. Hutton v. Doxsee, (Ia.) 89 N. W. 79.

Where a written contract for the sale of land has ceased to be operative in accordance with its terms, either by lapse of time, or occurrence of specified conditions, an oral agreement reviving the contract is within the statute. Smith v. Taylor, (Cal.) 23 Pac. 217; Davis v. Parish, 12 Am. Dec. 287; Scott v. Sanders, 6 J. J. Marsh 506.

A written agreement which falls within the statute may, or may not, be modified by subsequent parol agreement, depending on the nature of the subsequent agreement. If the subsequent agreement in itself constitutes a contract within the statute, it must of course be in writing to be valid, and if it is not valid it can have no effect on the earlier contract. Lawyer v. Post,

(C. C. A.) 109 Fed. 572; Hanson v. Gunderson, (Wis.) 70 N. W. 827; Hill v. Blake, 97 N. W. 216.

A contract for the sale of lands cannot rest partly in writing and partly in parol. And a modification of a written contract imposing new terms and obligations upon one of the parties thereto must be in writing, and upon a sufficient consideration. Heisley v. Swanstron, (Minn.) 41 N. W. 1029.

In order for the defendants to successfully maintain their defense in this action it was incumbent upon them to show that Almon S. Hugus was duly authorized in writing by Cora E. Hugus to make the contract of January 29, 1900. This fact their own evidence negatives. Moody v. Howe, 17 S. D. 545; Purkey v. Harding, 23 S. D. 632; State v. Mellette, 16 S. D. 297.

When a deed has been delivered as an escrow, it has no effect as a deed until the condition has been performed. Daggett v. Daggett, 144 Mass. 516, 16 Cyc. 576.

The decree of the court in this case in effect awarded the respondents a specific performance of their alleged contract, without any pleading on the part of defendants and respondents entitling them to such relief. This cannot be done. Purkey v. Harding, 23 S. D. 623.

Where are the equities in this case? A careful study of the record will show in what manner the respondents have conducted themselves since they took possession of these premises on July 9, 1893; they defaulted in the payment of the rents; they defaulted in carrying out even the first condition of the escrow agreement, and failed to make the first payment; the mortgage they placed in escrow was not acknowledged so as to entitle it to be recorded, and had the respondent carried out the first stipulation of the escrow agreement and gained possession of the deed, Cora E. Hugus would have had a worthless mortgage as security for the balance of the purchase price that the respondents never intended to pay; during all the time between January 30, 1897, up to the present time, the respondents were guilty of the most unconscionable and unequitable conduct toward Cora E. Hugus in their efforts to circumvent her and catch a bargain.

Specific performance will always be refused to a party, plain-tiff or defendant, when the agreement has been obtained by sharp and unscrupulous practices, by over-reaching, by concealment of important facts, even though not actually fraudulent, by trickery, by taking undue advantage of his position, or by any other means which are unconscientious. 1 Pomeroy's Equity Jurisprudence, Section 400; Section 2345 of the Revised Civil Code of South Dakota; Phelan v. Neary, 22 S. D. 265; Hartshorn v. Smith, 19 S. D. 653.

*Buell & Gardner,* and *Schrader & Lewis,* for Respondents.

The answer states all the facts necessary to give full and complete equitable and affirmative relief. The prayer prays judg-ment quieting the title of the defendant Margaret Appel and for such other and further relief as may be just.

All the evidence with reference to the contract between Cora E. Hugus and the defendant Margaret Appel was admitted with-out objection. Evidence thus admitted is not subject to a motion thereafter made by the plaintiffs to strike out. State v. Perkey, 22 S. D. 556; Herbert v. Herbert, 20 S. D. 87; Wendt v. Saint Paul R. R. Co., 4 S. D. 476; Hogan v. Klobo, 13 N. D. 319; Lee Conteux Caumont v. Morgan, 9 N. E. 861; Pontius v. People, 82 N. Y. 340; Levin v. Russell, 42 N. Y. 251; Zoller v. Grant, 3 N. Y. Sup. 539, 56 N. Y. Ct. 279; Wiggins v. Guthrie, 101 N. C. 661; Livermore v. Stine, 43 Cal. 274.

So far as the statute of frauds is concerned, it may be said, first, that the court found that the agreement was in writing, and this is sustained by the evidence, and, second, that there was such a part performance of the contract as to take it out of the oper-ation of the statute of frauds, and, third, that the plaintiffs and their grantors are estopped to deny that the defendant Margaret Appel is the owner of the property.

The ommission of the word "counterclaim" from the de-fendants' answer will not avoid the judgment for the following reasons:

First. The answer set up in the defendant a full and com-plete equitable title, and facts sufficient to compel the plaintiffs to a specific performance of her contract with Cora E. Hugus, and

the prayer asks for the quieting of her title and other affirmative relief, and the cause was tried by the court and the parties upon that theory, and under those circumstances neither the courts of South Dakota nor California have avoided a decree so rendered for the mere technical omission of the word "counterclaim" where the same was in all other respects just and equitable.

It is to cover just such matters as this that Sec. 153 Code of Civil Procedure was enacted, which reads as follows: "The court shall in every stage of action disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." Koester v. Company, (S. D.) 124 N. W. 740.

McCOY, P. J. It is undisputed that Cora E. Hugus was the former owner of a certain house and lots in Rapid City, and that both plaintiffs and defendants claim title through her. Plaintiffs brought this suit to determine adverse title as against defendants, and defendants made answer denying plaintiffs' title, and alleging title in Margaret Appel, one of defendants. It appears: That about 1893 Cora E. Hugus leased said lots and premises to defendants, and that thereupon defendants immediately went into possession thereof, and ever since have been and now are in possession thereof, residing in the dwelling house situated on said lots. In 1895 some negotiations were had between Cora E. Hugus and defendants concerning the sale of said premises to defendants. That an executory contract of sale was made in writing. Notes for $1,500, the purchase price, made and executed, a deed of conveyance executed by Cora E. Hugus and husband running to Margaret Appel, and a real estate mortgage not signed, were all delivered to a bank in Rapid City, under a provision of the said contract providing that when the first note of $200 was paid in full, and said mortgage executed by Margaret Appel and Morris Appel, her husband, the said deed was to be delivered by the bank to Mrs. Appel. But only $107 was ever paid on said first note, and the said mortgage was never signed by the Appels, and the said deed never delivered. The matter remained in this situation until the year 1900, when a new contract was made by

correspondence between the Huguses and the Appels, whereby the Huguses agreed to deed said premises to Mrs. Appel in payment of $400 in money, and the payment of all taxes against said property, the said $400 to be paid in two yearly installments of $200 each. It appears this arrangement to purchase said land by Mrs. Appel for $400 was wholly independent of the former written contract made in 1895, and was not intended as an alteration or modification of said written contract, but was an entirely new transaction. It is undisputed that Mrs. Appel paid $300 on said contract of 1900, and has paid the taxes against said property. It is claimed by the Appels that the whole of said $400 has been paid, and there is some testimony tending to substantiate their claim, but the court found that only $300 had been paid, and that there is still due and unpaid on said contract the sum of $100 and interest, amounting in the whole to the sum of $156. In 1905 Cora E. Hugus and husband executed and delivered a warranty deed of said premises to one W. H. Tompkins, trustee, and thereafter Tompkins, as trustee, by warranty deed, conveyed the same to plaintiffs. On the trial the court found that said contract of 1900 was a written contract between Cora E. Hugus and Margaret Appel; that $300 had been paid thereon; that $156 was still due and unpaid thereon; that Margaret Appel at all times since the making of said last contract has been in the actual possession of said premises occupying the same as the dwelling house of herself and family, and claiming to be the owner thereof, and has made improvements thereon of the value of $850, and of all of which facts said Tompkins and plaintiffs had notice and knowledge at and prior to the time Mrs. Hugus deeded said premises to Tompkins for plaintiffs. That court rendered judgment in favor of defendant Margaret Appel, she having paid into court for the benefit of plaintiffs the said sum of $156, that she was the sole owner of said premises, and that title be decreed and quieted in her, and that plaintiffs be forever barred and estopped from all claim of right, title, interest, or estate in or to said premises, and that said title be conveyed to her.

[1] It is first contended by plaintiffs that the answer of defendant Margaret Appel cannot be treated as a counterclaim, but,

if it is any answer at all, it can only be considered as a defense. We are of the opinion that, as no objection seems to have been made in the court below to this part of the answer not being a counterclaim, it will be treated as such on this appeal.

[2] It is next contended by appellants that the contract for sale of said property of January, 1900, was oral, and is void under the statute of frauds; and is also void on the grounds that said contract was made by Almon S. Hugus on behalf of Cora E. Hugus as her agent, and that he was not authorized by any writing signed by her to make said contract. We are of the opinion that, under the evidence in this case, such contentions of plaintiffs are not tenable. The evidence preserved in the record shows that the contract of January, 1900, was wholly the result of a written correspondence between the Huguses, who then resided in Michigan, and the Appels, and was principally in the handwriting of the husbands, and that all said correspondence has been lost or destroyed with the execption of five letters. September 30, 1899, Mrs. Hugus wrote to Mr. Appel as follows: "Mr. H. is sick and wants me to add a few lines more to his letter. He is in a bad condition and wants to make you a new proposition as property has went down so bad there that he says for me to write you that you can take the property for $1,000.00 in three payment, the first payment $333 1-3 down and the balance in one year and two years, as he says there must be something down before long as it has run an unusually long time and he would like for you to send the tax receipts as per agreement." On January 29th Mr. Hugus wrote to Mr. Appel: "I received yours of the 9th inst. just in time to save me a trip to the hills. I had all of my arrangements made and intended to start the next Monday. Well, you wanted to know if your proposition was satisfactory. Yes, so far as a man can be satisfied in such a case, that house cost me over three thousand dollars, but I wouldn't be bored one year more as I have in the last six years for ten houses, so if you can meet your time it is all right and I will try and take my medicine like a man and try to forget that I was ever there. You can get the blank deed and fill it out so that C. E. Hugus can execute it, also notes attached so that when they are paid the

deed will be made out and forwarded to you or you can send the payments to me and I will see that you get the deed promptly. You can do this through the bank there if wou would rather." On March 15; 1900, Mr. Hugus wrote Mrs. Appel: "I have just arrived at home yesterday and found both of your letters awaiting me, also draft for One Hundred Dollars enclosed to apply on our deal." On August 26, 1900, Mr. Hugus wrote to Mrs. Appel: "I received a check from Morris when he was in Chicago on the Am. N. Bank of Deadwood for $100.00." On June 16, 1901, Mr. Hugus wrote to Mrs. Appel as follows: "Yours of recent date with check enclosed for $100.00 to apply on purchase of property received. Please let me know how soon we can close the deal as I am tired of it hanging fire so long and use of money is of some importance to me and I surely have a long trial of holding up that property for nothing."

Mr. Hugus as a witness, in substance, testified an agreement was made with defendant in 1895 to sell them the property, and a deed and mortgage and notes made and left in the bank. A subsequent agreement was made in January or February, 1900. "I offered Mr. Appel the property for $400, and he to pay all taxes. This was a separate, another, trade, and the money paid on this deal did not apply on the deed and mortgage agreement of 1895. It was another trade. I made him a new proposition. I made another offer to him, which was accepted. I made this subsequent transaction as agent for my wife. The title stood in her name. When negotiating with the Appels for the sale of this property, I did so with the full knowledge and consent of my wife. It was all made by correspondence. The correspondence is all lost—only one letter that refers to it. I lost the remainder of the letters written by Appel to me concerning this second transaction. They were scattered one way and another. I can't tell what month that second agreement was made. It was some tine in 1900, January or February." In pursuance of this bargain they paid $300.

Cora E. Hugus, in substance, testified as follows: "Subsequent to 1895 there was another agreement made between me and defendants in reference to the sale of the property in question,

some time in 1900. They were to settle back taxes and pay $400 in money. I received $300 from them subsequent to that. The negotiations made in respect to this property were made by my husband acting as my agent and by my authority. The correspondence respecting the new bargain has been lost. Either myself or husband with my knowledge and authority answered the letters from the Appels and sent receipts to Mrs. Appel for the money paid upon the purchase price for this property."

Morris Appel, in substance, among other things, testified: "The second proposition to sell the property was in January or February, 1900, to pay back taxes and $400 cash, made by letters altogether. Correspondence carried on principally between Mr. Hugus and myself. Most of this correspondence has been lost. I have looked for it, but have been unable to find it, except what I have turned over to my attorneys. I know there were letters from both Mr. and Mrs. Hugus offering to sell this property for $400. I know remittances were made to Mrs. Hugus on the purchase of this property after January, 1900, on the $400 proposition —three checks and one draft of $100 each. They were made payable to Mrs. C. E. Hugus, and these checks were indorsed by Mrs. C. E. Hugus, Cora E. Hugus, I presume, in her handwriting. That is the person to whom I sent them. I know her handwriting. I wrote demanding a deed after the payments were all made, and they never answered."

Margaret Appel, in substance testified: "I heard the testimony of Mr. and Mrs. Hugus in which they referred to having sold this property to myself and Mr. Appel in January, 1900, for $400. These negotiations were carried on by letter. I remember the receipt of the letter from Mr. Hugus dated January 29, 1900. About that time I received a letter from Cora E. Hugus with reference to the sale of said property. I do not remember the words, but it was almost exactly the same as the letter from Mr. Hugus. It referred to the consummation of the deal for $400, glad it was closed up, and saving her a great deal of worry. I got this letter from Mrs. Hugus. I have looked for it, but could not

find it, made search for it.  Four hundred dollars has been paid by checks and drafts."

We are of the opinion the evidence is amply sufficient to sustain the finding of the court that Cora E. Hugus in writing contracted to sell and convey said lots to Margaret Appel in January or February, 1900, for $400 in money and the payment of the taxes, that said sum of $400 has been paid, and that Margaret Appel is the owner of said premises, and entitled to a conveyance therof from plaintiffs.  The evidence clearly shows that Mrs. Hugus herself took part in the transaction at all times during its consummation; that, while her husband took part in and performed many of the details connected therewith, nevertheless, she took such part therein helrself as to make the transaction her written contract, and which was not a contract solely by agent.  She was present directing and taking part in the acts of the agent. It will serve no useful purpose to further repeat the testimony shown by the record.  While the findings of fact in this case are possibly broader than necessary and some inconsistency exists therein, still all findings material and necessary to warrant the judgment rendered were made, and which findings are clearly sustained by the testimony.  All questions presented by the respective briefs have been carefully considered, and it will serve no useful purpose to further refer thereto.

The judgment and order appealed from are affirmed.